UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Torri Lyn Martir, | : | Case No. 5:24-00624-MJC |
| | : | |
| Debtor. | : | |

# **M E M O R A N D U M**

## **I.  Introduction**

Presently before the Court is the Debtor's Chapter 13 Plan and the Chapter 13 Trustee's Objection to Confirmation of the Chapter 13 Plan. The Chapter 13 Trustee ("Trustee") objected to confirmation of the proposed Chapter 13 Plan on the basis that the Debtor has not committed all of her disposable income to the plan pursuant to 11 U.S.C. §1325(b)(1)(B). The Trustee challenges the Debtor's claimed expenses on her Means Test for her gym membership, private Pilates classes, additional food, and transportation. The Debtor asserts that the expenses are allowable as Other Necessary Expenses or as special circumstances.

For the reasons stated below, the Trustee's Objection will be sustained in part and overruled in part. Accordingly, the Court will allow the Debtor to file an amend Chapter 13 plan within fourteen (14) days.

## **II.  Procedural Posture**

The Debtor filed a voluntary Chapter 13 case on March 15, 2024. Dkt. # 1. Contemporaneously with the Petition, she filed her schedules, statements, and other required documents. *Id.* The Debtor then filed her initial Chapter 13 plan ("Chapter 13 Plan" or "Plan").

Dkt. # 5. The Debtor's Plan proposes to pay monthly payments to the Trustee over 60 months for a total base amount of $16,000. *Id.* The Debtor appears to have filed the bankruptcy to address her credit card and tax debts. The Chapter 13 Trustee ("Trustee") filed his objection to the Plan on the basis of the Debtor's Means Test calculations. *See* Dkt. # 22.

The confirmation hearing was adjourned several times in an effort to allow the parties to seek a consensual resolution of the matter. *See* Dkt. # 27, 28, 31. The parties submitted pre-hearing briefs in support of their positions. *See* Dkt. # 34, 35. The Court conducted an evidentiary hearing on August 22, 2024. The Court requested post-hearing briefs, which the Debtor and the Trustee filed on September 12, 2024 and September 26, 2024 respectively. *See* Dkt. # 38, 39. Therefore, this matter is ripe for disposition.

### III. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016. The pending matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(L). Venue is proper pursuant to 28 U.S.C. §1409(a). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters pursuant to Fed. R. Bankr. P. 9014(c).

### IV. Facts

Based on the credibility and demeanor of the witness, the plausibility of her testimony, the exhibits, and consideration of the parties' post-trial submissions, the Court makes the following findings of fact.

1. The Debtor's Chapter 13 Plan proposes to pay a base amount of $16,000 over 60 months. *See* Dkt. # 5, Plan.

2. The first five months of payments to the Trustee are $120 a month, then the payments step up to $280 per month for the duration of the Plan. *See Id.*

3. The Debtor is an above median income debtor and she has no dependents. *See Id.*

4. The Debtor's gross monthly income is $7,037.80. *See* Dkt. # 1, Schedule I.

5. The Debtor suffers from celiac disease, which is the inability to tolerate or digest gluten protein, and Hashimoto thyroiditis, which is a condition characterized by an underactive thyroid. Both are autoimmune conditions. Tr. at 3:47-3:48.[1]

6. The Debtor was diagnosed with celiac disease approximately twenty years ago. *Id.*

7. She follows a strict gluten free diet where she avoids grains and gluten. Additionally, she avoids sugar and processed sugars because she believes it impacts her conditions. *Id.* at 3:49.

8. She buys gluten free products for items such as bagels, pasta, and soup, which she believes are more expensive. *Id.* at 3:49-3:50.

9. If she accidently consumes gluten, it causes her gastrointestinal distress plus a number of other symptoms including severe pain, vomiting, hair loss, rashes, headaches, and inflammation. *Id.* at 3:48-3:49.

10. On average, the Debtor spends $721.23 at the grocery store per month. *Id.* at 4:16.

11. Of that amount, approximately $613.05 is for food. *Id.* at 4:03.

12. The Debtor also has a condition known as "flat feet" which affects her balance. *Id.* at 3:33.

---

[1] The August 22, 2024 evidentiary hearing was not transcribed; therefore, reference to the Transcript ("Tr.") will be to the time of day of the hearing.

13. Partly due to her poor balance, the Debtor fell and fractured her tibia in 2020. She required two surgeries which occurred in 2021 or 2022. *Id.* at 3:33.

14. In November 2023, the Debtor had a knee replacement. She was prescribed physical therapy three times a week. *Id.* at 3:34-3:35.

15. However, the Debtor was unable to afford the $40 co-pay for each session, and therefore, was attending once a week. She discontinued physical therapy after a few months. *Id.* at 3:34-3:35.

16. Instead, she performs the physical therapy on her own at the gym. *Id.* at 3:35.

17. Her gym membership is $10 per month and $50 per year. *Id.* at 3:25-3:26.

18. The Debtor did not specify the number of weeks of physical therapy that her physician prescribed, whether physical therapy was still required, or whether she is able to do physical therapy at home.

19. The Debtor did not describe any complications or conditions that would require indefinite physical therapy for her knee.

20. Additionally, the Debtor has a private Pilates instructor. She attends a private session once a week, which costs $30 per session. *Id.* at 3:26.

21. She has been doing Pilates for approximately three years. *Id.* at 4:23. She believes that the Pilates helps to improve her core and leg strength and balance.[2] *Id.* at 3:35.

22. The Debtor did not indicate that Pilates was specifically prescribed by her physician.

23. The Debtor lives in Dingman's Ferry, Pennsylvania. *Id.* at 4:03-4:04.

---

[2] The Debtor testified that she is unable to keep up with a traditional group class. Tr. at 3:36. Furthermore, she prefers the individual instruction because the instructor tailors the session to her individual needs, assists her in focusing on her breathing, and keeps her from injuring herself while performing the moves. *Id.*

24. She is an administrative officer for the Department of Veteran's Affairs where she has been employed since 2005. *Id.* at 3:25.

25. She works from home two days a week. The other three days a week she is required to be in the office. *Id.* at 4:06-4:08; Ex. 5.

26. She has two work locations. She works in Montrose, New York, twice a week, and in Castle Point, New York, once a week. *Id.* at 4:05-4:06

27. She commutes approximately 80 and 88 miles one way to the two locations. *Id.*

28. There is no public transportation available in her area which she could utilize in order to travel to work. *Id.* at 4:03.

29. The Debtor is not aware of any ride share or carpooling options. *Id.* at 4:04.

30. The Debtor moved from Florida, New York to Dingman's Ferry, Pennsylvania in 2021 or 2022. *Id.* at 4:18-4:19.

31. The Debtor spends approximately $532 a month on travel-related expenses. This amount includes gasoline, automobile insurance, maintenance, and tolls.

### V. Discussion

#### a. Legal Standard

In a Chapter 13 case, the Means Test is the statutory mechanism used to determine the amount that must be paid to creditors under a Chapter 13 plan.[3] *See Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 65 (2011). The Means Test was adopted as a reform measure under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[4] "to help

---

[3] In Chapter 13, the Means Test is calculated using Official Forms 122C-1 and 122C-2.

[4] Pub. L. No. 109-8, 119 Stat. 37.

5

Case 5:24-bk-00624-MJC    Doc 40    Filed 12/17/24    Entered 12/17/24 14:31:32    Desc
Main Document    Page 5 of 15

ensure that debtors who *can* pay creditors *do* pay them." *Id.* at 64 (citation omitted) (emphasis in original).

Pursuant to Section 1325(b)(1),[5] when the trustee or an unsecured creditor files an objection to confirmation of a chapter 13 plan, the Court may not approve the plan unless all unsecured claims are paid in full or the debtor is committing all of his or her projected disposable income to the plan. *See Hamilton v. Lanning*, 560 U.S. 505, 509 (2010). Section 1325(b)(1) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325(b)(1).

While the Bankruptcy Code does not define projected disposable income, "disposable income" is defined as the "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for a debtor's maintenance and support, qualifying charitable contributions, and business expenditures. *See* §§1325(b)(2)(A) and (B). For an above median debtor, the amounts reasonably necessary to be expended for the maintenance or support of a debtor or a dependent of the debtor is determined under the Means Test in §707(b)(2)(A) & (B). *See Hamilton*, 560 U.S. at 510. Section 1325(b)(3) provides in material part:

---

[5] Unless otherwise noted, all further statutory references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

6

> Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) ….

11 U.S.C. §1325(b)(3).

Above median debtors may deduct certain expenses which are based upon Internal Revenue Service ("IRS") National and Local Standards. *See In re Styerwalt*, 610 B.R. 356, 369 (Bankr. D. Colo. 2019). This is reflected in §707(b)(2)(A)(ii)(I), which provides,

> (ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. … In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

11 U.S.C. §707(b)(2)(A)(ii)(I). "The National and Local Standards … are tables that the IRS prepares listing standardized expense amounts for basic necessities." *Ransom*, 562 U.S. at 66.

The Trustee objected to the proposed Chapter 13 Plan on the basis that the Debtor has not committed all of her disposable income to the plan pursuant to §§1325(b)(1)(B) and (b)(2). As stated above, the Trustee objects to certain entries on the Debtor's Means Test related to certain health care expenses, food, and transportation. The Court will address each category below.

### A. Healthcare Expenses

The Trustee objects to Line 22 of the Means Test where the Debtor is seeking to deduct $142.98 for additional health care expenses. The additional amount that the Debtor is claiming has changed a number of times. The Debtor filed her initial Form 122C-2 with her Petition, which listed $155.54 in additional health care expenses. *See* Dkt. # 1. The Debtor then amended her Form 122C-2 on July 3, 2024, which reduced her Line 22 health care expenses to $92.95 per month. *See* Dkt. # 30. The Debtor is now claiming $142.98 on Line 22. As the Debtor explained in her post-hearing brief, she testified at the August 22nd hearing that she spends $30 per session on her private Pilates classes and attends one per session per week. This equates to $1,560 per year or $130 per month. When added to her gym membership, her proposed additional health care expenses are $142.98 per month. *See* Exhibit A, Dkt. # 38-1 (Draft Amended Form 122C-2). This additional amount is for only the Debtor's gym membership and private Pilates classes.

The Trustee argues that the Debtor has not met her burden of proof to establish that the amounts for Debtor's gym membership and private Pilates classes are reasonably necessary for the treatment of a serious health condition. The Trustee's position is the Debtor has failed to establish that her physician has prescribed the gym and the Pilates classes as treatment for her medical conditions. *See* Dkt. # 39, Trustee's Brief at 13. Furthermore, the Trustee argues that the IRS guidelines generally do not allow taxpayers to claim gym membership and Pilates classes as deductions on their federal income tax returns. *See Id.* at 14.

The Debtor disagrees and asserts that the Pilates and gym expenses are reasonably necessary to help address her serious medical conditions (her autoimmune disorders and condition known as "flat feet"). The Debtor maintains that the gym membership and the Pilates classes help her with her strength, balance, and endurance. The Debtor argues that with no competing evidence

presented by the Trustee, her testimony should be accepted as definitive as to the reasonableness of the expenses. *See* Dkt. # 38, Debtor's Brief at 13.

Pursuant to the National Standards, above median debtors who are under the age of 65 years old are allowed a standard allowance of $79.00 per month for out of pocket health care expenses.[6] Acceptable expenses within this category include medical services, prescription medications, and medical supplies, such as eyeglasses and contact lens. *See* Financial Analysis Handbook at §5.15.1.9 at https://www.irs.gov/irm/part5/irm_05-015-001#idm139862108264304. The IRS Financial Analysis Handbook ("Handbook") indicates that debtors may be permitted to claim more than the standard allowance if they provide documentation to substantiate and justify the additional expenses. The Handbook further indicates that the miscellaneous allowance under the National Standards, may be used for any portion of the expenses that exceed the allowed living expenses and not allowed under a deviation. *See* Handbook at §5.15.1.9.

The Debtor has taken $79 standard amount on her Means Test and seeks to claim an additional $142.98 on Line 22 as an "Other Necessary Expense." The Debtor has not asserted that the additional expenses are allowable as a "special circumstance," which is Line 43 of the Means Test.

The Debtor testified that she has two distinct health issues. She suffers from celiac disease and Hashimoto thyroiditis (both are autoimmune disorders) and flat feet. It appears from her testimony, that the gym and Pilates expenses are related to both health conditions.

The Debtor testified to a further health issue – that she had a knee replacement in November of 2023. She was prescribed physical therapy three times a week. The Debtor testified that she

---

[6] *See* https://www.justice.gov/ust/eo/bapcpa/20231101/bci_data/national_oop_healthcare.htm. The Court notes that this amount is for cases filed between November 1, 2023 and March 31, 2024, which is the applicable timeframe for the instant case.

was unable to afford the co-pay for each session so she performs physical therapy on her own at the gym. The Debtor, however, did not provide any detail regarding the type of physical therapy involved, therefore, it is unclear whether the physical therapy requires the use of gym equipment or whether the Debtor can perform the exercises at home without the use of equipment. Furthermore, there was no mention of the duration of the physical therapy and the Debtor did not testify to any complications or circumstances that would explain the reasons for prolonged physical therapy that would be continuing over the several years of the Debtor's bankruptcy case.[7]

As for the Pilates classes, the Debtor testified that she believes that it helps with her strength and balance. She stated that she has been doing Pilates for three years and she has tried group classes, but she is unable to keep up with the class. She believes she benefits from the private instruction because her trainer monitors her movements, tailors the exercise for her particular issues, and protects her from injuring herself.

The Debtor, however, did not testify that any of her current or past physicians have specifically prescribed Pilates as a course of treatment for any of her medical conditions. The Debtor acknowledges that her testimony is the only evidence in support of the private Pilates classes[8] but she argues that the Trustee presented no competing evidence and therefore, where her testimony is credible, it should be credited and the expense should be allowed. *See* Dkt. # 38. Debtor's Brief at 13.

---

[7] The Debtor did not explain why she was still in physical therapy nearly a year after her knee replacement surgery or why the physical therapy was required for the duration of this case.

[8] The Debtor attempted to admit, under Fed. R. Evid. 807, an affidavit from her current physician in support of her claimed medical expenses; however, the Court ruled during the August 22nd hearing that the affidavit was not admissible under the residual hearsay exception. *See United States v. Turner*, 718 F.3d 226, 233 (3d Cir. 2013).

10

The Debtor bears the burden of proof that the claimed expenses are actual, reasonable, and necessary. *See In re Namie*, 395 B.R. 594, 598 (Bankr. D.S.C. 2008) (citing *In re Barnes*, 378 B.R. 774, 777 (Bankr. D.S.C. 2007)). As one Court observed, "[t]he focus of inquiry under the 'reasonably necessary' test is to ensure that a debtor is not maintaining an excessive lifestyle to the detriment of unsecured creditors." *Id.* (citing *In re Loper*, 367 B.R. 660, 665 (Bankr. D. Colo. 2007)). The Court is not persuaded that private Pilates instruction is reasonably necessary for treatment of the Debtor's health conditions.

Therefore, the Court determines that the gym membership and private Pilates classes are discretionary expenses and should be disallowed. Accordingly, the Court will sustain the Trustee's Objection as to these expenses.

### B. Food Expenses

Next, the Trustee objects to the Debtor claiming a special circumstance on Line 43, for additional expenses for food in the amount of $119.05. According to the Trustee, an above-median debtor may not claim more than the National Standard amount, plus five percent, for food and clothing, absent a showing of "special circumstances."

For the Debtor, the National Standard amount for Food, Clothing, and Other Items is $841.[9] The $841 monthly amount is comprised of:

- Food - $466
- Housekeeping supplies - $47
- Apparel and services - $96
- Personal care products and services - $43
- Miscellaneous expenses - $189

The Debtor has claimed the National Standard amount of $466 for food.

---

[9] *See* https://www.justice.gov/ust/eo/bapcpa/20231101/bci_data/national_expense_standards.htm.

11

Under the Means Test, a Chapter 13 debtor may also claim as an Other Necessary Expense, additional food and clothing expenses up to five percent of the IRS National Standards. The Debtor claimed the additional 5% amount of $28 on Line 30 for additional food expenses.

The Trustee argues that the food expense should be disallowed on Line 43 because it goes beyond the allowed deviation of $28 on Line 30 and it can be categorized under the miscellaneous expense on Line 6 which allows for $189 per month. *See* Dkt. # 39, Trustee's Brief at 15. Alternatively, the Trustee contends that the Debtor did not meet her burden to prove the amount she spends that is directly attributable to her special diet. *See Id.* at 14.

Prior to the August 22nd hearing, the Debtor was claiming a total of $721.23 per month for food. *See* Ex. 12. Of that amount, the Debtor was claiming $227.23 on Line 43 as a special circumstance. At the hearing, the Debtor testified that approximately ten to fifteen percent of the expenses she claimed for food is not actually for food. The Debtor conceded that her documented expenses were made at grocery stores but a portion of the purchases were for other items, such as candles, greeting cards, or wrapping paper. Accordingly, in her post-hearing Brief, the Debtor adjusted the total amount she is claiming for food to $613.04 and the special circumstance amount she is claiming on Line 43 to $119.05. *See* Dkt. # 38, Debtor's Brief at 11.

The Debtor argues that her testimony more than adequately supported her contention that she has a serious medical condition that requires that she adhere to a special diet. The Debtor posits that if the Court agrees, then the expense will automatically qualify as a special circumstance on Line 43. Alternatively, the Debtor argues that the additional food expense may be allowed as an additional health care expense on Line 22. The Debtor argues where an individual suffers from a medical condition that requires the purchase of special food, then to the extent that such food is

12

more expensive than the food it replaces, that difference is deductible as a medical expense. *See* Dkt. # 38, Debtor's Brief at 15.

The Court determines that the Debtor failed to meet her burden of establishing how much of her food expense is directly attributable to the Debtor's special diet which is required to address her autoimmune conditions. The Debtor testified that she had been diagnosed with celiac disease and her condition requires her to follow a strict grain free and gluten free diet. The Court credits the Debtor's testimony that she suffers from autoimmune conditions that require her to adhere to a special diet. However, the Debtor provided very little evidence as to how much of her grocery purchases relate to her special diet.[10] The Debtor did not have grocery receipts to document her food purchases and show that she purchases special food items. The scant testimony on this issue was very vague and mentioned only two items such as gluten free bagels and pasta, with rough estimates as to how much more gluten free items would cost versus the non-gluten free version. The Debtor also did not present an estimate of how much of her overall food budget was devoted to special diet items. Without evidence of the amount of her gluten free products, the Court is unable to determine what amount might be allowable as a special circumstance or a necessary medical expense. Accordingly, the Trustee's Objection must be sustained and the Debtor's additional food expense on Line 43 will be disallowed.

**C. Travel Related Expenses**

Lastly, the Trustee objects to the Debtor's transportation expense in the amount of $127.62 on Line 43. The Trustee argues that the Debtor's long commute from her home in Dingman's Ferry, Pennsylvania to her places of employment in Montrose and Castle Point, New York, does

---

[10] Seemingly, the Debtor is attempting to claim any amount of her food expenses that are above the National Standard, plus the 5% provided for on Line 30, without establishing that those expenses are actually for her special diet.

not constitute a special circumstance. The Trustee advocates for a strict interpretation of special circumstances under §707(b)(2)(B) in order to carry out the objectives of the amendments to the Bankruptcy Code pursuant to BAPCPA, which were designed "to preclude the allowance of any improper discretionary spending by higher income debtors in chapter 13 and to enhance distributions to unsecured creditors as a result." *In re Sparks*, 360 B.R. 224, 230 (Bankr. E.D. Tex. 2006); accord *Ransom*, 562 U.S. at 64. For example, courts espousing a stricter view of special circumstances have determined that it entails circumstances that are "uncommon, unusual, exceptional, [or] distinct …" *In re Martin*, 371 B.R. 347, 352 (Bankr. C.D. Ill. 2007). The Trustee argues that a long commute is not uncommon and does not rise to the level of a serious medical condition or a call to duty in the Armed Forces, which are the examples in the statute.

The Debtor, on the other hand, advocates for a broad interpretation which does not require that the circumstances be extraordinary. *See e.g., In re Fonash*, 401 B.R. 143, 147 (Bankr. M.D. Pa. 2008) (suggesting that burden to establish special circumstances was not set particularly high; standard is special not extraordinary) (citing *In re Champagne*, 389 B.R. 191, 198 (Bankr. D. Kan. 2008)). The Debtor argues that all that is required is the expenses must be reasonable and necessary for which there is no reasonable alternative. The Debtor cites to several courts that have allowed long commuting expenses as a special circumstance. *See e.g., In re Martin*, 2013 WL 6196566 (Bankr. N.D. Ohio Nov. 27, 2013); *In re Morgantini*, 2011 WL 10676928 (Bankr. E.D. Cal. 2011); *In re Batzkiel*, 349 B.R. 581 (Bankr. N.D. Iowa 2006).

On balance and under the facts of this case, the Court concludes that the Debtor has met her burden as to her commuting expenses. The Debtor testified that prior to filing her bankruptcy case she lived in Florida, New York but moved to Pennsylvania in 2021 or 2022. As a result, her commute to work is between 80 to 88 miles one way. Her employer requires her to be on-site at

14

least three days a week. She has been with the same employer for nearly 20 years and finding new employment at the same rate of compensation closer to her home is unlikely. *See* Ex. 2. The Debtor testified credibly that there are no public transportation or carpooling options available that she can use to commute to work. The Debtor further established that moving closer to her place of employment is not a viable option either because housing expenses in New York are significantly more expensive than what she is expending currently, *see* Ex. 2, and she lacks the necessary funds to move. The Trustee did not present any evidence to contradict the Debtor's testimony. Accordingly, the Court will overrule the Trustee's Objection and will allow the commuting expenses as a special circumstance.

VI. **Conclusion**

For the reasons stated above, the Court determines that the Trustee's Objection to confirmation is sustained as to the Debtor's expenses for her gym membership, private Pilates classes, and additional food. The Court further determines that the Trustee's Objection is overruled as to the Debtor's transportation expenses and those expenses will be allowed as a special circumstance. Accordingly, the Court grants Debtor leave to file an amend Chapter 13 Plan on or before December 31, 2024. An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: December 17, 2024

15

Case 5:24-bk-00624-MJC    Doc 40    Filed 12/17/24    Entered 12/17/24 14:31:32    Desc
Main Document    Page 15 of 15