# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 13** |
| | : | |
| **Torri Lyn Martir,** | : | **Case No. 5:24-bk-00624-MJC** |
| | : | |
| **Debtor.** | : | |

# MEMORANDUM OPINION

The matter before the Court is Counsel for the Chapter 13 Debtor's Interim Application for Compensation and Reimbursement of Expenses filed on February 27, 2025, Doc. 49 ("Fee Application"). In what can be considered a routine Chapter 13 case with a single contested issue, Debtor's counsel, Mr. Carlo Sabatini, Esquire ("Applicant") seeks approval of interim compensation of $28,263.75 and reimbursement of expenses in the sum of $519.10 for the period from May 12, 2023 through February 14, 2025. For the reasons stated below, the application is granted in part and denied in part.

## I.    BACKGROUND

### A. The Debtor's Bankruptcy Case.

On March 15, 2024, Debtor Torri Lyn Martir ("Debtor") filed a Chapter 13 bankruptcy petition. Debtor's filed Schedules indicate that Debtor is unmarried, has no dependents, and is employed as a hospital administrative officer. Doc. 1. Debtor has a total net monthly income of $4,324.11 (gross income is $7,037.80), monthly expenses of $4,124.75, leaving a monthly net income of $199.36. Doc. 1 (Schedules I and J).

Debtor's first 60-month Chapter 13 Plan provided for monthly payments of $120.00 for the first four (4) months of the Plan and $280.00 for the remaining fifty-six (56) months of the Plan for a total Plan payment of $16,000.00. Doc. 5. The Chapter 13 Trustee objected to the Plan

on April 24, 2024. Doc. 22. The Trustee objected on the grounds that Debtor's health care, transportation expenses, and special circumstances were not necessary expenses and disputed the use of those amounts on the Form 122C-2, which is commonly referred to as the means test. *Id*. Following this objection, both the Trustee and Mr. Sabatini briefed the means test issue and an evidentiary hearing was held on August 22, 2024. Docs. 35, 36, 38, 39. This Court issued a Memorandum Opinion and an Order Sustaining in Part and Overruling in Part on December 17, 2024. Docs. 40, 41. Debtor subsequently filed an Amended Chapter 13 Plan Calculation and an Amended Chapter 13 Plan. Docs. 44, 45. On February 20, 2025 the Amended Plan was confirmed.[1] Doc. 47.

After a thorough review of the case docket, it is clear that this was a routine Chapter 13 bankruptcy case with no unusual or special circumstances, with the exception of the means test litigation.[2]

**B. Applicant's Fee Application.**

The Fee Application seeks approval of fees of $28,263.75 and reimbursement of expenses of $519.10. Doc. 49. The Application represents time relating to pre-filing preparation of the petition and schedules, post filing services, and time spent relating to the means test litigation.[3]

---

[1] The difference in the total proposed original plan payments and the confirmed plan payments is $31,766.97. Debtor's monthly payment went from $280.00 in the original Plan, Doc. 5, to "step up" payments that increase to $925.22 for the last 47 months under her First Amended Plan. Even though Debtor's monthly payment increased almost $656.00, Debtor is current with these payments.

[2] As described more fully below, the crux of the means test dispute related to Debtor's high grocery expense, due to certain health issues, ongoing physical therapy and pilates expenses, and transportation expenses arising out of a particularly long commute to her workplace. Counsel listed all of the above expenses as special circumstances on the means test and the Chapter 13 Trustee argued those expenses should be disallowed. Audio of April 3, 2025 Hearing at 10:56 A.M. As the hearing hasn't been transcribed, reference to the hearing shall hereafter be "Hearing at [time]."

[3] The Application lists a staggering 104.7 hours, prior to any discounts, billed to this consumer Chapter 13 case thus far. Mr. Sabatini's time alone totaled 63.4 hours billed at $415 per hour. Doc. 49-2. There are approximately 31.4 total hours entered prior to the petition being filed. This Application is identified as interim and as such, Applicant could seek payment of additional sums.

2

Nearly all post-filing work in this matter arises out of the means test litigation, being approximately 60.5 hours of the 104.7 total billed hours. Applicant spent approximately 13.5 hours preparing for and attending hearings, 28.5 hours preparing two (2) briefs, and an additional 10.7 hours collecting information on Debtor's expenses post-filing. Doc. 49-2.

The Chapter 13 Trustee filed an Objection outlining specific line items in the Application that his office found to be unnecessary or unreasonable. Prior to the hearing, the Trustee and Applicant had resolved the Objection and the resolution reduced the fees by approximately $2,912.50.[4] Doc. 51.

A hearing on the Application was held on April 3, 2025.[5] At the hearing, Applicant was asked to demonstrate to the Court that the fees and expenses were both reasonable and necessary. Applicant stated that Debtor's counsel does not often litigate means test issues due to the cost thus causing this issue to be a novel matter requiring substantial briefing. Hearing at 10:57 A.M. He also stated that the Chapter 13 Trustee was not inclined to settle this matter. *Id*. at 11:02 A.M. Applicant went on to rest based upon the *Maldonado v. Houstoun*, 256 F.3d 181 (3rd Cir. 2001), stating that his briefing was under the three (3) hours per page deemed reasonable in *Maldonado*. *Id*. at 11:11 A.M.

## II.   DISCUSSION

### A.   <u>Legal Standard</u>

Bankruptcy Courts have a *duty* to review fee applications notwithstanding the absence of any objections by any interested party. 11 U.S.C. § 330(a); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994). "The court's responsibility to protect the estate is especially

---

[4] The Court appreciates the Trustee's obligation to identify improper or excessive billing entries by the Applicant and the Applicant's agreement to settle the disputes by the terms of the Stipulation. However, the Court finds that in this matter the fees requested are beyond the pale and must be addressed.
[5] Mr. Sabatini appeared at the hearing. The Debtor did not appear.

3

important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance." *In re Szymczak*, 246 B.R. 774, 778 (Bankr. N.J. 2000). A court's "overriding obligation" when examining a professional's fee application is to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Busy Beaver*, 19 F.3d at 844. In discussing the "duty to preserve the integrity of the court," the *Busy Beaver* Court cited to *In re Evans,* 153 B.R. 960, 968 (Bankr. E.D. Pa. 1993):

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications sua sponte. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Busy Beaver*, 19 F.3d at 841.

This Court has written extensively regarding Mr. Sabatini's excessive fees and billing practices and incorporates herein the Court's legal analysis in *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. 2022), *In re Beckhorn*, Case No. 5:21-00849-MJC (Bankr. M.D. Pa. November 17, 2022), *In re Roberson*, Case No. 5:22-02242-MJC (Bankr. M.D. Pa. March 27, 2024), *In re DeCantis*, Case No. 5:22-01826-MJC (Bankr. M.D. Pa. September 30, 2025), *In Re Johannes*, Case No. 5:20-01044-MJC, (Bankr. M.D. Pa., January 20, 2026.) [6] It is worth noting that the Court approves, without objection or reduction, the vast majority of fee applications presented. Typically,

---

[6] Other fee applications analyzed by this Court include: *In re Carpenter*, 665 B.R. 89 (Bankr. M.D. Pa. 2024), *In re Thomas*, 2023 WL 6885827 (Bankr. M.D. Pa. 2023), and *In re Grove*, Case No. 5:20-00698-MJC (Bankr. M.D. Pa. March 31, 2023).

4

only fee applications that are substantially above the "norm" in this District are reviewed in detail by the Court. In this case, the Court is tasked again with the review of a bill arising out of a relatively minor skirmish regarding certain "allowed expenses" of the Debtor that shocks the conscience of the Court.

As Applicant knows from many prior hearings regarding his fees, for requests for compensation the burden of proof rests on the applicant to establish that the fees earned are reasonable and necessary. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995) (citing *In re Metro Transp. Co.*, 107 B.R. 50, 53 (E.D. Pa. 1989)); *In re Pochron*, 2022 WL 1085459, at *2 (Bankr. S.D. Ohio 2022); *In re Murray*, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. 2007). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by [the] debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (citing *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981)).

Under §330(a), the Court may award "reasonable compensation for actual, necessary services rendered" by the attorney and by other professionals "based on (i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases." *Busy Beaver*, 19 F.3d at 840; 11 U.S.C. §330(a)(3). A bankruptcy court has "broad discretion" to determine reasonable attorneys' fees, as the "bankruptcy court is more familiar with the actual services performed and has a far better means of knowing what is just and reasonable than an appellate court can have." *In re ASARCO, L.L.C.*, 751 F.3d 291, 294 (5th Cir. 2014) (citing *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987) (internal quotation marks and citation omitted)); *In re Smith*, 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005).

This discretion extends to the review of time spent on specific issues and briefing. The Third Circuit in *Maldonado v. Houstoun* held that three (3) hours per page spent on briefing a single uncomplicated issue on appeal was reasonable. *Maldonado*, 256 F.3d. at 185-187. However, in *Maldonado* the Court reduced the fees in that case due to duplicative briefing and where pages exclude substantive legal analysis. *Id*. at 186. Further, the District Court for the Middle District of Pennsylvania has recently clarified this "three hour rule" in *In re Lewis*, a case relating to excess fees by the Applicant. *In Re Lewis*, 2026 WL 184294 at *6 (M.D. Pa. Jan. 23, 2026). The Court in *Lewis* determined that three hours may be a "starting point" and that "courts also consider the complexity of issues presented, the attorney's experience, and the procedural posture of the case."[7] *Lewis*, 2026 WL 184294 at *6 (citing *Walton v. Massanari*, 177 F. Supp. 2d 359, 365 (E.D. Pa. 2001) (holding that two hours per page was reasonable for an appellate brief in a case involving simple legal issues but a detailed fact-specific record); *Migliori v. Lehigh Cnty. Bd. of Elections*, 2025 WL 2493843, at *4 (E.D. Pa. May 19, 2025), *report and recommendation adopted*, 2025 WL 2493838 (E.D. Pa. July 31, 2025) (holding that a work rate of 1.7 hours per page was reasonable for a brief accompanying a petition for a temporary restraining order)).

In reviewing fees, the Court is not required to make a line-by-line analysis of the fee application. *See In re 388 Route 22 Readington Holdings LLC*, 2023 WL 4249266, at *3 (3d Cir. 2023); *Badyrka*, 2022 WL 4656034, at *9; *In re McKeeman v. Laughlin,* 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999) ("When ... a case presents routine Chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fee accordingly. It is not necessary for the court to find that the time spent on any given task was excessive before reducing

---

[7] In the Lewis bankruptcy case, this Court reduced Mr. Sabatini's attorney fees finding that much of the fees were deemed unreasonable. *In Re Lewis*, 2024 WL 759430 (Bankr. M.D. Pa. 2024). Mr. Sabatini appealed the decision in *Lewis* to the District Court and then to the Third Circuit Court of Appeals on February 21, 2026. *Clarence Lewis v. The Money Source, Inc*., Case. No. 26-1389 (3rd Cir.).

the award.") "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver,* 19 F.3d at 845. In making a fee determination, the court must take into consideration whether the professional exercised "reasonable billing judgment." *In re Grosswiler Dairy, Inc.,* 257 B.R. 523, 528 (Bankr. D. Mont. 2000); *In re Mednet,* 251 B.R. 103 (9th Cir. BAP 2000).

### B. The Fee Application

Upon a thorough review of the case docket and the Applicant's submissions, the Court finds that this case is a standard or routine Chapter 13 case involving a single issue requiring additional work by the Applicant.[8]  While Applicant is entitled to more than the PRF due to the litigation involved on the means test issue, a reduction in the amount of allowed compensation is necessary due to charges for services that are non-billable administrative tasks, paralegal or secretarial duties that should have been billed at non-attorney rates, and for excessive time billed for certain tasks.[9]  The Court bases these findings on its experience of over thirty-five (35) years of bankruptcy practice in this District and as a Judge reviewing hundreds of fee applications.

Here, after a hearing and submission of additional supporting papers, the Court finds that Applicant has not met his burden in supporting why he should be allowed fees that are substantially higher than all other practitioners in this District. The Application before the Court is for pre-

---

[8] This District set a Presumptively Reasonable Fee ("PRF") for routine Chapter 13 cases of $4,500, L.B.R. 2016-2 (c), which Courts have used as a "starting point" to what should be considered a "reasonable" fee in a routine Chapter 13 case. *See In re Jones,* 661 B.R. 922, 925 (Bankr. E.D. Pa. 2024)(no-look amount acts as a guidepost for assessing reasonable fees); *In re Schuman,* 2013 WL 1195279, at *6-7 (Bankr. N.D.N.Y. 2013) (describing presumptive fee as "pre-calculated lodestar" and utilizing it as a starting point for review of lodestar fee applications).  The PRF in this District was increased to $5,000 effective for cases filed on or after October 1, 2024.  Applicant is seeking almost six (6) times that amount.

[9] The court's authority (as opposed to its duty) to award less than the amount requested even when no objection is filed is indisputable and is grounded in the statute. *See* 11 U.S.C. §329(b).  Here, any reduction in fees results in more funds available to the estate and its creditors.

petition, pre-confirmation, and post-confirmation work. Despite Applicant's assertions at the April 3 Hearing, the sole driver of the high fees is not simply the post-filing work required to litigate the means test issue. Hearing at 11:50 A.M. The Court is once again tasked with reviewing the excessive and unreasonable fees incurred pre-confirmation, as well as the excessive fees associated with the means test litigation.

### C. The Hours Billed Pre-Filing are Excessive and Unreasonable.

Typically, a review of legal invoices is a rather straight forward process. However, Applicant's invoices are convoluted in that they contain "gross" billing hours and corresponding dollar amounts and then an amount discounted on some entries. The invoice attached to the Application has gross billings of 104.7 hours totaling $32,003.50 and then, apparently recognizing the excess hours billed, applies a minimal discount of 15.74 hours totaling $3,739.75. Doc. 49-2, p. 1.[10] Here, Applicant's hourly rate is $415.00, which is one of the highest rates in our District.[11] As this Court has repeatedly found in other cases where the Applicant has billed excessively, given the high billing rates it would be expected that Applicant's hours billed should be less, not substantially more than other attorneys. The Court, again, finds there is no justification for billing at the highest hourly rates in this District for clerical, paralegal and/or non-billable tasks. The Court also finds that the amount of hours billed for the standard pre-filing work is excessive.

The Applicant and his staff expended approximately 31.4 hours prior to the filing of the bankruptcy petition. Doc. 49-2. Included in this time is 22.4 hours spent on preparation of schedules, document collection, and related matters thereto and another 5.7 hours spent on the specific expense issues that would later arise in the means test litigation. *Id*. This unusually high

---

[10] In several prior hearings the Court has questioned Mr. Sabatini and continues to struggle to find any complexities in these cases to warrant billing so many hours.

[11] The paralegal rate ($150/per hour) is also billed at highest levels in our District.

number of hours is primarily related to "data collection" efforts and preparing the Debtor's Schedules. The standard for these services in a routine Chapter 13 case is less than ten (10) hours and should be done primarily by staff at a much lower billing rate. However, in this case, Mr. Sabatini's staff billed approximately seven (7) hours for data collection and nearly eleven (11) hours under just the "Prepare schedules" time entry category for his pre-filing services. *Id*. Put in perspective, the Debtor was billed for more hours to "prepare" the most basic documents in a bankruptcy case than other attorneys charge for the entire pre-filing portion of a Chapter 13 case.[12] Further, the bankruptcy schedules are all computer generated from the data inputted by staff making it difficult for the Court to understand how Applicant can charge eleven (11) hours to prepare these forms.

Applicant's pre-filing fees and time spent are not only excessive but can involve duplicate billing. On March 15, 2024, a conference between Mr. Sabatini, his paralegal, and his client is billed at 1.10 hours for Applicant *and* his paralegal. This meeting, due to the charges for both attorney and paralegal presence, was billed for a total of 2.20 hours or $605.00. Doc. 49-2. A similar billing entry for both Mr. Sabatini and a staff member completing a task together occurred on February 18, 2024, however in that time entry, the hours for the paralegal time were discounted down to zero, suggesting Applicant recognizes that billing the time for both himself and his staff member attending the same meeting is inappropriate. No such correction was applied to the time entry for the meeting on March 15, 2024. *Id*.

---

[12] As an example, the Court routinely approves fee applications in "routine" Chapter 13 cases submitted by an attorney with similar experience. *See In re Sciacca*, 4:25-bk-00795-MJC (Doc. 55). In *Sciacca*, counsel billed, at a much lower rate, a total of 17.7 hours through confirmation. This time included all pre-filing tasks *plus* services related to an original and three (3) amended Plans, response and resolution of a Motion for Relief from Stay, and a Motion for a Wage Attachment.

Applicant's attorney fees for the pre-filing services incurred prior to the means test litigation in this case are excessive and unreasonable. The Court hereby reduces the pre-filing hourly fees from $4,687.00 to $3,503.00. This represents a reduction of the hours for schedules preparation, document collection, and other pre-filing related matters from approximately 22.4 hours to 15 hours and a reduction of the inappropriately billed administrative tasks billed from 3.3 hours to 0 hours.

### D. **The Means Test Related Fees Charged are Simply Outrageous.**

For an experienced bankruptcy practitioner, guiding a case to confirmation is relatively simple, even where the Trustee objects to expenses or requests additional documentation. In this case, the Chapter 13 Trustee objected to confirmation based on specific expenses included on the Debtor's Amended Chapter 13 Calculation of Disposable Income form which is referred to as the "means test". Doc. 22. The Trustee objected to the following monthly expenses on the means test: additional healthcare expenses of $92.95, and "special circumstances" being additional food expenses of $227.23 and extraordinary transportation of $127.62. *See* Line 43. Doc. 39, p. 3. While these expenses appear innocuous enough on the means test, the Applicant was attempting to include expenses for a private pilates instructor, gluten free food, and a long commute to work.

Even though Mr. Sabatini billed an unreasonable number of hours for data collection pre-filing, he stated that due to the Trustee's objection it was necessary to collect additional documentation.[13] It is also acknowledged that Applicant prepared two

---

[13] During the hearing, the Trustee advised the Court that part of a proposed resolution included Applicant reducing the fees for post-petition budget document collection on the basis that Mr. Sabatini should have already had those documents on hand prior to filing. Hearing at 11:06 A.M. This is a particularly salient point when considering Mr. Sabatini's submitted billing. Nearly six hours had been billed prior to filing to review and address the allowed expense specific issues and despite that extensive pre-petition preparation Mr. Sabatini and his staff still required an additional 10.7 hours of billed time to gather documents and address what was a seemingly anticipated objection. Doc. 49-2.

(2) briefs and prepared for and attended an approximately two (2) hour evidentiary hearing.  While the Court understands that litigation is not without additional cost, Applicant herein is billing the bankrupt Debtor's estate approximately 60.5 hours for a total of approximately $21,564.00, before discounts, to litigate simple means test issues. Doc. 49-2.

To support the fees, Applicant leaned heavily on the decision in *Maldonado*, arguing that the case supported three (3) hours per page to write a simple brief and that his brief billing was well under that limit. Hearing at 11:09 A.M.  That said, accepting this interpretation of *Maldonado* suggests that it would be reasonable for Applicant to charge $41,085.00 for just the briefing in this matter and that by charging *only* $11,827.50 to draft his briefs, his fees are by definition reasonable. *Id*. at 11:11 A.M.

The Court reviewed both the briefs and Applicant's billing.  Applicant billed 28.5 hours to write two (2) briefs in this case. Doc. 49-2.  The Applicant billed 8.9 hours, inclusive of .10 hours for "after-hours" filing of the brief for the first brief filed in the case.  *Id*.  The first brief totals eleven (11) pages, excluding exhibits. Doc. 35. Of the eleven (11) total pages, only six (6) include substantive legal analysis and the remaining are facts, calculations, and references to documents filed in the case.  *Id*.  For the second brief filed on September 12, 2024, Applicant billed 19.6 hours. Doc. 49-2.  There are twenty-two (22) total pages in this brief, excluding exhibits, and of those twenty-two (22) pages approximately six (6) pages included substantive legal analysis, the remainder were facts from the hearing and re-calculations of the means test items. Doc. 38.

Applicant argued during the April 3 Hearing that the issues before the Court were novel and involved whole cloth research and writing. *Id*. at 11:11 A.M. However a review of the two briefs, suggests quite the opposite. Docs. 35, 38. When the briefs are placed side by side the legal

11

analysis from the first brief to the second brief changed very little and included much of the same case law. The similarities are most visible when reviewing the transportation sections of both briefs, where the analysis of *In Re Morgantini* and *In Re Batzkiel* appearing in the second brief is identical to the analysis in the first brief. Doc. 35, p. 9-10 and Doc. 38, p. 20-21. Further, the Court finds that means test issues are routinely litigated in bankruptcy court and are not complex areas of the law.

The District Court in *Maldonado* directly addressed the issue of billing where "all of the pertinent law had been briefed" and that it was "stunned" by the large amount of billable hours notwithstanding the readily available prior filings. *Maldonado*, 256 F.3d at 186. This Court is also stunned to see 19.6 hours billed for a second brief where, of the six (6) pages of substantive legal analysis, most of the facts and law had been previously researched, briefed, and analyzed in the first brief and required minimal flushing out. Docs. 35, 38.

Additionally, like the District Court in *Lewis*, this Court finds that three (3) hours per page is not a rule but rather a starting point. Reasonableness cannot be reduced down to a math problem, but rather must be viewed based upon several factors, specifically the complexity of the issue, the attorney's experience, and the procedural posture of the case. *Lewis*, 2026 WL 184294, at *6. It is difficult for this Court to look at the billing in this case and find that a means test battle initiated in order to permit a Chapter 13 debtor to continue monthly expenses for private pilates instruction and a large monthly grocery bill, required 28.5 hours of legal briefing, much less the additional litigation fees totaling approximately 30.6 hours for document collection, settlement negotiations, and preparation and attendance at the hearing. Doc. 49-2.

A close inspection of the additional means testing litigation fees is shocking. Applicant billed 13.5 hours to prepare for and attend a two (2) hour evidentiary hearing, an additional 10.7

hours on allowed expense specific work in this case, including *more* data collection fees, and an additional 1.5 hours of non-billable administrative tasks. Doc. 49-2. When looking at this accumulation of hours allegedly incurred on this matter, it is difficult to understand how such a discrete issue such as means test expenses could warrant over sixty (60) hours of time that will be paid by the Debtor's creditors in this bankruptcy case. The Court finds that Applicant did not meet his burden to establish that these excessive fees are reasonable or necessary. *Zolfo, Cooper & Co.*, 50 F. 3d at 262.

Judge Mayer found in *In Re Jones* that "[s]imple cases call for solutions that are not complicated." *In re Jones*, 661 B.R. 922, 928 (Bankr. E.D. Pa. 2024). The means test, and the expenses included therein, is not a complex issue requiring an inordinate amount of work by an experienced counsel. When sixty (60) hours of litigation is measured against the result, an increase in trustee payments of roughly $645.22 per month over the remaining plan payments, one starts to wonder to what extent the Debtor truly benefited from the excessive amount of attorney time spent. It is neither reasonable or necessary for the Debtor, or more specifically in this matter – the creditors, to be billed approximately $21,000 in order to litigate disproportionally high grocery bills, luxury gym memberships and transportation expenses.[14] Mr. Sabatini's ongoing characterization of his fees as reasonable, without any justification for them, cannot be reconciled with the billing as submitted to this Court.

As in *DeCantis* and *Johannes*, the Court finds that the Applicant has not met his burden to support the excessive entries. Accordingly, the Court hereby reduces the post-petition attorney

---

[14] The difference in the confirmed plan following the adjudication of the means test issue amounted to $31,766.97 being made available to general unsecured creditors. Doc. 45. If Mr. Sabatini were paid as requested in his fee application only $3,503.04 in additional payments would be available to general unsecured creditors. The fees billed for the litigation of the means test issues amount to approximately 89% of the additional payments to be distributed by the Chapter 13 Trustee in the final confirmed Plan.

fees by $7,536.80, representing an approximate reduction in the hours billed post-petition as follows:

1.5 hours on administrative tasks reduced to 0 hours;
10.7 hours on expense specific work reduced to 6.5 hours;
13.5 hours on hearing preparation/hearing attendance reduced to 8.1 hours;
28.4 hours on briefing reduced to 15 hours;

For a total reduction of 22.5 hours.

## III.    CONCLUSION

For the reasons set forth above, and after considering the totality of the circumstances, the Court finds that Mr. Sabatini's Fee Application is excessive and hereby reduces compensation requested from $28,263.75 to $16,834.80 and allows reimbursement of expenses in the sum of $519.10 for the period from May 12, 2023 through February 14, 2025.

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: May 12, 2026

14